## Fannie McCue v. F. Klein et al.

(Case No. 1475-4607.)

1. Damages — Injuries resulting in death. — If one whose mental faculties are suspended by intoxicating drink is induced to continue to swallow spirituous liquor to such excess as manifestly to endanger his life, and he dies therefrom, he who thus takes advantage of his helpless and drunken condition is liable in damages (under arts. 2899, 2900 and 2902 of the statutes) to the surviving husband, wife, children and parents of the deceased.

2. Same. — The fact that the deceased killed himself by drinking on a wager as to the quantity of liquor he could swallow, when the experiment was likely to result in death or great bodily harm, cannot relieve those who induced the act from liability. Consent to an assault is no justification.

Appeal from Guadalupe. Tried below before the Hon. Everett Lewis.

The opinion states the case.

*Alex. Henderson,* for appellant.

*Ireland & Burgess,* for appellee.

Willie, Chief Justice. — By arts. 2899 and 2900 of our Revised Statutes, it is provided that an action for actual damages on account of injuries causing the death of any person may be brought, when such death is caused by the wrongful act, negligence, unskilfulness or default of another, where they are of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury. The appellant's right of action in this case therefore depends upon whether or not her husband, had he been injured by the acts of the appellees as set forth in the petition, but not in such manner as to produce death, would have had a cause of action against the defendants below.

As a general principle, a man can recover no damages for an injury received at the hands of another, with his own consent, unless it arises from some act which is in itself a breach of the peace. For instance, it is said by Mr. Cooley, that "a man cannot complain of a nuisance, the creation of which he concurred in or countenanced." But if two men agree to fight and one is injured, the law will not excuse on account of the consent given to the assault. And "an injury even in sport would be an assault, if it went beyond what was admissible in sports of the sort, and was intentional." Cooley on Torts, p. 163; Adams *v.* Waggoner, 33 Ind., 531; Com. *v.* Colberg, 119 Mass., 350. Much less can a man consent to the taking of.

his own life, or to an injury which is likely to result in his own death.

But even in cases where no breach of the peace is involved, and the act to which consent is given is matter of indifference to public order, the maxim of *volenti non fit injuria* presupposes that the party is capable of giving assent to his own injury. If he is divested of the power of refusal by reason of total or partial want of mental faculties, the damage cannot be excused on the ground of consent given. A consent given by a person in such condition is equivalent to no consent at all,— more especially when his state of mind is well known to the party doing him the injury. If an infant of tender years, or an idiot, or a person *non compos mentis*, from any cause agrees to an act which he cannot know will injure him, the person causing him to perform, or suffer the performance of, such act will be answerable for its consequences. It is just as if a person, without knowledge that a poisonous or deleterious substance is contained in an article of food offered him, swallows it at the solicitation of another, who is aware of its noxious character,— in such case of course the one who gives the food is liable in damages for the injury that follows. Com. *v.* Stratton, 114 Mass., 303.

And so if one whose mental faculties are suspended by intoxication is induced to swallow spirituous liquors to such excess as to endanger his life, the persons taking advantage of his condition of helplessness and mental darkness and imposing the draught upon him must answer in damages for the injury that ensues. They must answer to him if such injury should fall short of the destruction of life; and to his family if death should be the result.

Applying these principles to the present case we find that the allegations of the petition show that appellant's husband was an habitual drunkard, who, from long and excessive use of spirituous liquors, had so beclouded his mind and fettered his will that he was wholly incapable of resisting his appetite for strong drink when offered to him in any quantity whatever. That the defendants, well knowing this fact, wilfully and recklessly conspired together to induce and cause him to swallow three pints of whisky in quick succession, and did actually induce him so to do, and thereby caused his death. The defendants made a wager that the deceased could drink that quantity of whisky at one time, and gave him a dollar to undergo the experiment. After he had taken two pints quickly following after each other, and was in a state of intoxication by means of which he had lost all self-control, and when the appellants were proceeding to administer to him the third pint, a bystander

remonstrated with them, declaring that if he drank this third pint it would certainly cause his death. They did not, however, heed the warning, but prevailed on the deceased to swallow the third pint, whereupon he immediately died. To these allegations the court below sustained a general demurrer and dismissed the cause.

Admitting that the allegations show that deceased had, at the time he consented to drink such an excessive quantity of spirits, sufficient consciousness to know the injury it was likely to cause him, still the act of the defendants cannot be excused because he consented to an experiment which might end in his death, or at least in doing him great bodily harm. The rule of law is clear that consent to an assault is no justification. Christopherson v. Bare, 11 Q. B., 477; Cooley on Torts, 163. Much less can a man consent to the taking of his own life. " His life is not his to take or give away; it would be criminal in him to take it and equally criminal in any one else, who should deprive him of it by his consent." Cooley on Torts, p. 162.

Here the deceased gave assent to an assault, to be effected by taking into his stomach poison in such quantity as would probably deprive him of life. It was administered to him perhaps in sport, but no one has a right to trifle with human life in such a manner; as well might they have wagered that they could fire a pistol at his person and not injure him. His consent to such a trial would not have excused the battery or murder that might have followed.

But if consent was sufficient to excuse the conduct of the defendants in administering to the deceased the first two pints of whisky, they were certainly inexcusable in giving the additional pint which seemed to be the immediate cause of his death. Before he took the last draught he was in such a state of drunkenness as to be unable to control himself or resist the efforts of the defendants to continue their experiment upon him. They should have known that the additional quantity given to one already rendered helpless by what he had taken would be dangerous to health and perhaps to life. If they were thoughtless as to this matter themselves, still they were warned by one who seemed to be aware of the danger, that another pint would surely kill. They paid no attention to the warning, but induced him to swallow the third pint, and thus caused his death. They had every opportunity of knowing that fatal results would doubtless follow their acts, yet they wantonly and recklessly persisted in them, and they are liable for all the damage that ensued.

They, with knowledge that fatal effects might follow, induced the deceased, who was himself unaware of this fact, and wholly

unable to resist their efforts, or to know that he was consenting to his own death, to swallow a draught that deprived him of life. They were as much liable for the consequences as if they had deceived the deceased as to the nature of the liquid he was taking, or had concealed a drug in a draught otherwise harmless and persuaded him to drink it.

"Deception may sometimes be equivalent to force as an ingredient in an assault," says Mr. Cooley. Cooley on Torts, p. 163. And the same may be said of persuasion, when exercised upon one deprived of reason and incapable of resistance.

We think the petition disclosed a good cause of action, and the general demurrer to it should have been overruled. For the error of the court in sustaining the demurrer, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 16, 1883.]